UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PATRICK A. WADE                                    CIVIL ACTION

VERSUS                                             NO. 13-5890

STATE OF LOUISIANA                                 SECTION "J"(5)

**REPORT AND RECOMMENDATION**

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

**I.   Procedural history**

Petitioner, Patrick Wade, is a convicted prisoner incarcerated in the Louisiana State

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by the exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

Penitentiary, in Angola, Louisiana. Wade was charged by bill of information with armed robbery in violation of Louisiana Revised Statute 14:64.[2] On May 12, 2010, he was found guilty as charged.[3] He was sentenced on June 17, 2010 to ninety-nine years imprisonment at hard labor without benefit of probation, parole or suspension of sentence.[4] Thereafter, the State filed a multiple offender bill of information, alleging that Wade was a fourth felony offender under Louisiana Revised Statute 15:529.1. Following a hearing on August 9, 2010, the trial court found Wade to be a fourth felony offender, vacated the original sentence, and imposed a sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.[5]

On direct appeal, Wade raised three assignments of error:

    (1)    The evidence presented by the State was insufficient to convict him of armed robbery;

    (2)    His sentence of life imprisonment was excessive; and

    (3)    The trial court erred in charging the jury that a less than

---

[2] State Rec., Vol. 1 of 6, Bill of Information.

[3] State Rec., Vol. 5 of 6, Trial transcript (May 12, 2010), p. 203; see also State Rec., Vol. 1 of 6, trial minutes.

[4] State Rec., Vol. 5 of 6, Transcript of sentencing proceedings held June 17, 2010, p. 32. State Rec., Vol. 1 of 6, sentencing minutes of June 17, 2010.

[5] State Rec., Vol. 5 of 6, Transcript of multiple bill hearing held August 9, 2010, pp. 10-11.

unanimous verdict was sufficient to convict him of armed robbery.

The Louisiana Fifth Circuit Court of Appeal affirmed his conviction and sentence on August 30, 2011.[6] Wade did not seek further review on direct appeal in the Louisiana Supreme Court.

On August 2, 2012, Wade submitted a *pro se* application for post–conviction relief to the state district court.[7] In his application, he claimed that cumulative errors by defense counsel denied him effective assistance of counsel in violation of the Sixth Amendment. He asserted six claims in particular:

    (1)    Trial counsel was ineffective when he failed to investigate and challenge the State's use of Petitioner's alleged confession that was obtained through force and threats;

    (2)    Trial counsel was ineffective when he failed to conduct

---

[6] *State v. Wade*, 10-997 (La. App. 5th Cir. 8/30/11), 77 So.3d 275; State Rec., Vol. 1 of 6.

[7] State Rec., Vol. 1 of 6, Uniform Application for Post-Conviction Relief signed August 2, 2012. Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state-court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006). If that date cannot be gleaned from the state court record with respect to the filings in this case, this Court will simply use the signature date of the applications as the filing date, in that the various applications were obviously placed in the mail no earlier than the date they were signed. In those instances where no signature date appears on a document and no other evidence is available, the Court will look to the file-stamp placed on the document by the clerk of court.

      any investigation in obtaining video surveillance;

(3) Trial counsel was ineffective when he failed to investigate and obtain a copy of the alleged victim's medical records;

(4) Trial counsel was ineffective by being inadequately prepared for trial;

(5) Trial counsel was ineffective when he failed to obtain transcripts from prior court proceedings held prior to enrollment as counsel in order to adequately prepare for trial; and

(6) Trial counsel was ineffective due to his failure to possess the requisite experience during jury selection.[8]

On September 13, 2012, Wade filed a motion to appoint counsel and a supplemental application for post-conviction relief with two additional claims:

(7) Both the State and the trial judge deprived Petitioner of his due process right to a fair trial by failing to observe procedures adequate to protect Petitioner's right not to be tried and convicted while incompetent to stand trial; and

(8) The State's late disclosure of video surveillance of the alleged crime scene deprived Petitioner of his right to a fair trial.[9]

---

[8] *Id.*, Memorandum in support of post-conviction relief, pp. 3-9.

[9] State Rec., Vol. 2 of 6, Supplemental application for post-conviction relief with memorandum of law in support signed September 13, 2012 and bearing a file-stamp date of

4

On October 4, 2012, Petitioner filed a motion to supplement his post-conviction relief application with an additional exhibit.[10] On October 23, 2012, the district court denied the motion to appoint counsel.[11] On November 8, 2012, the district court denied his post-conviction relief application.[12] On December 4, 2012, the district court denied Petitioner's motion to supplement. The district court noted in its ruling that it had previously denied Petitioner's application for post-conviction relief, and that "[n]othing in petitioner's Motion to Supplement affects that ruling or entitles petitioner to an evidentiary hearing."[13]

On December 7, 2012, Wade filed his writ application in the Louisiana Fifth Circuit Court of Appeal.[14] On January 31, 2013, the court of appeal rejected the application on procedural grounds citing Rule 4-5(C)(5) and Rule 4-3 of the Uniform Rules-Courts of Appeal. In its written reasons, the court of appeal held:

---

September 18, 2012.

[10] *Id.*, Motion to supplement post-conviction relief on request for evidentiary hearing signed October 4, 2012 and bearing a file-stamp date of October 9, 2012.

[11] *Id.*, Motion to appoint counsel to perfect his ineffective assistance of trial and appellate counsel claims; District Court Order denying motion to appoint counsel signed October 23, 2012.

[12] State Rec., Vol. 2 of 6, District Court Order signed November 8, 2012.

[13] *Id.*, District Court Order signed December 4, 2012.

[14] State Rec., Vol. 6 of 6, writ application to the Louisiana Fifth Circuit submitted to prison officials for mailing on December 7, 2012, postmarked December 10, 2012, and stamped as filed December 17, 2012.

> In his pro se writ application, relator claims that the district court erred in denying his application for post-conviction relief, his motion requesting appointment of counsel, and his motion to supplement his application for post-conviction relief and request for evidentiary hearing.
>
> Rule 4-5(C)(5) of the Uniform Rules-Courts of Appeal requires that the submitted application include the assignments or specifications of errors and a memorandum in support of the application. In his writ application, relator merely sets forth a statement of the case and makes a general request to this Court to "review his claims." He does not set forth any specific arguments as to how the trial court erred in its rulings, but merely attaches the motions, supplemental claims, and exhibits that were filed in the district court. Accordingly, there are no arguments for this Court to review.
>
> We further note that relator's writ application, which seeks review of the district court rulings denying his motion requesting appointment of counsel and his application for post-conviction relief, was filed in this Court more than thirty days from the district court rulings and therefore is untimely. See Uniform Rules-Courts of Appeal, Rule 4-3. Accordingly, this writ application is denied.[15]

On February 18, 2013, Wade filed a request for supervisory writ of review in the Louisiana Supreme Court.[16] On July 31, 2013, the Louisiana Supreme Court denied relief without stated

---

[15] State Rec., Vol. 6 of 6, *Patrick Wade v. Burl Cain, Warden*, 12-KH-931 (La. App. 5th Cir. 1/31/13) (unpublished writ ruling).

[16] State Rec., Vol. 6 of 6.

6

reasons.[17]

On September 17, 2013, Wade filed his federal application for *habeas corpus* relief.[18] In his petition, Wade raises the following claims:

(1)   The evidence was not sufficient to support the verdict;

(2)   The trial court imposed an excessive sentence;

(3)   The trial court erred in charging the jury that a less than unanimous verdict was sufficient to convict him of an offense punishable by hard labor;

(4)   The cumulative errors by trial counsel constitute ineffective assistance of counsel;

(5)   Trial counsel was ineffective when he failed to investigate and challenge the State's use of Petitioner's alleged confession that was obtained through force and threats;

(6)   Trial counsel was ineffective when he failed to conduct any investigation in obtaining video surveillance;

---

[17] *State ex rel. Wade v. State*, 2013-KH-0422 (La. 7/31/13), 118 So.3d 1116; State Rec., Vol. 6 of 6.

[18] Rec. Doc. No. 1, Petition. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." *Roberts v. Cockrell*, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner signed the petition on September 17, 2013, which is presumed to be the earliest date on which it could have been delivered to prison authorities for mailing.

(7)  Trial counsel was ineffective when he failed to obtain a copy of the alleged victim's medical records;

(8)  Trial counsel was ineffective by being inadequately prepared for trial;

(9)  Trial counsel was ineffective when he failed to obtain transcripts from prior court proceedings held prior to enrollment as counsel in order to prepare adequately for trial;

(10) Trial counsel was ineffective due to his failure to possess requisite experience during jury selection;

(11) The State deprived him of his due process right to a fair trial by failing to observe procedures adequate to protect his right not to be tried or convicted while incompetent to stand trial;

(12) The State deprived him of his due process right to a fair trial in violation of the Fifth and Fourteenth Amendments to the United States Constitution by failing to conduct a hearing on his mental capacity.[19]

The State filed a response arguing that the federal application is untimely and that Petitioner has failed to exhaust his remedies in the state courts.[20] For the following reasons, the Court finds merit only as to the alleged failure to exhaust and recommends dismissal

---

[19] Rec. Doc. No. 1, Petitioner's memorandum of law in support of *habeas corpus*, pp. 2-3.

[20] Rec. Doc. No. 14.

without prejudice for that reason.

## II.     Discussion

The threshold questions in *habeas* review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.[21]  *Nobles v. Johnson*, 127 F.3d 409, 419–20 (5th Cir.1997) (citing 28 U.S.C. § 2254(b), (c)).

   *(a)     Timeliness*

The State contends Petitioner's federal *habeas* petition is untimely because it was filed 372 days from the date the conviction became final. A petitioner must bring his federal *habeas corpus* claims within one year of the date on which his underlying criminal judgment became "final." 28 U.S.C. §2244 (d)(1)(A). On that point, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th

---

[21] The State's response advances only a non-exhaustion defense at this time.

> Cir.2003). *However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires." Id.* at 694; *see also Foreman v. Dretke*, 383 F.3d 336, 338 (5th Cir.2004) (section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).
>
> Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. *See Foreman*, 383 F.3d at 338–39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. *See Causey v. Cain*, 450 F.3d 601, 606 (5th Cir.2006); *Roberts*, 319 F.3d at 693.

*Butler v. Cain*, 533 F.3d 314, 317 (5th Cir.2008) (emphasis added).

In this case, the State's time calculations begin with the flawed premise that Petitioner's conviction and sentence became final on September 13, 2011. Petitioner's conviction became final when the time for seeking further direct review in the state court expired. The Louisiana Fifth Circuit affirmed Petitioner's conviction and sentence on August 30, 2011. Under Louisiana law, Petitioner then had thirty (30) days to file a writ application with the Louisiana Supreme Court to challenge that judgment. Because he filed no such application by that deadline, his state criminal judgment became final *for purposes of the AEDPA*, and his federal limitations period commenced, on September 29, 2011. Accepting the rest of the State's calculations as true and accurate, the instant petition would have been filed timely within 356 days of the date his conviction became final. For this reason, the Court rejects the State's argument that the federal petition is untimely.

### (b) Exhaustion of state court remedies

Before bringing a *habeas* action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in state post-conviction proceedings. 28 U.S.C. § 2254(b)(1)(A), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004).

The State argues that none of Petitioner's claims raised in his federal petition were properly exhausted in the state courts. The State's contention has partial merit. For the following reasons, it is evident that Petitioner has not "fairly presented" some of the claims raised now in his federal petition at each level of the state court system, as required to fully and properly satisfy the exhaustion requirement.

There is no question that Petitioner has failed to present his first three claims (*i.e.* sufficiency of the evidence, excessiveness of sentence and jury charge as to a less than unanimous verdict) to the state's highest court, the Louisiana Supreme Court, for review.

11

Although the three claims were included in his direct appeal to the Louisiana Fifth Circuit Court of Appeal, he did not thereafter present the claims on direct review to the Louisiana Supreme Court. Nor did he ever raise these three claims in any post-conviction relief application filed in the state courts. Because he has never fairly presented the substance of his first three claims to the Louisiana Supreme Court and given that court the opportunity to pass upon and correct the alleged violations of his federal rights, the Court finds that his first three claims are plainly unexhausted.

The State contends the nine remaining claims are unexhausted because they were not "fairly presented" to the Louisiana Fifth Circuit Court of Appeal for review in accordance with the court's procedural rules.[22] Those claims were first raised in Petitioner's state post-conviction relief application and supplemental application filed in the district court. Petitioner then filed a related writ application with the Louisiana Fifth Circuit Court of Appeal; however, he failed to assign any errors therein.[23] In denying relief, the court of appeal found that because he did not comply with the rules of court requiring specification or assignment of error, "there are no arguments for this Court to review."[24]

---

[22] Rec. Doc. No. 14, p. 13.

[23] Uniform Rules, Courts of Appeal, Rule 4–5(C)(5) requires that relator's submissions include, "the assignments or specifications of errors and a memorandum in support of the application, in accordance with Rules 2–12.2 and 2–12.10, and a prayer for relief[.]"

[24] State Rec., Vol. 6 of 6, *Wade v. Cain*, 12-KH-931 (La. App. 5th Cir. 1/31/13).

12

The question here is whether, on the writ application presented, Petitioner gave the Louisiana Fifth Circuit a full and fair opportunity to consider the federal claims and to correct the asserted constitutional defects in Petitioner's conviction. In this particular case, a review of the application Petitioner submitted to the Louisiana Fifth Circuit reveals that the claims were fairly presented to that court. Petitioner's writ application expressly seeks, "review [of] his claims herein that will support that his denial of post conviction relief and sentence was obtained in violation of [the] Sixth Amendment to the United States and Article 1, Section 13 of the Louisiana Constitution."[25] The application contains a table of contents that lists his six claims of ineffective assistance of counsel. Those claims are plainly identified with numerical detailed headings, accompanied by argument on each specific claim, in the body of the writ application.[26] Petitioner also fairly apprised the court of appeal that he sought review of his "supplemental claims" (*i.e.*, federal claims regarding violations of his rights to due process and a fair trial) and directed the court of appeal's attention to those supplemental claims made a part of the writ application itself.

Under these circumstances, despite Petitioner's failure explicitly to assign specifications of error on the part of the trial court, the Court finds his federal claims were nonetheless fairly presented to the court of appeal for review on the merits. The record indicates that the court

---

[25] *Id.*, Supervisory writ application to the Louisiana Fifth Circuit (12-KH-931).

[26] These pages appear to have been reproduced from his post-conviction relief application submitted in the state district court.

13

of appeal had the opportunity in this instance to resolve the federal claims on the merits, whether or not it chose to do so.[27] The State does not contend that these claims were not fairly presented to the Louisiana Supreme Court, which denied relief without assigning reasons. Accordingly, the Court rejects the State's argument that Petitioner's remaining nine claims are unexhausted because they were never "fairly presented" to the state court of appeal for review.

If one or more of the petitioner's claims is exhausted and one or more of the claims is unexhausted, it is a "mixed" petition and the entire petition may be dismissed for failure to exhaust state remedies. *See Pliler v. Ford*, 542 U.S. 225, 230, 124 S.Ct. 2441, 159 L.Ed.2d 338 (2004) (citing *Rose v. Lundy*, 455 U.S. 509, 510, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)). Because Wade's federal application is a mixed petition, containing both exhausted and unexhausted claims, it is subject to dismissal without prejudice. *Alexander v. Johnson*, 163 F.3d 906, 908 (5th Cir. 1998) ("A *habeas* petition containing both exhausted and unexhausted claims is a 'mixed' petition which should be dismissed without prejudice.").

Although the Supreme Court has recognized the availability of a stay and abeyance approach for "mixed" petitions due to the AEDPA's one-year statute of limitations, it has held that such a remedy must be exercised only in "limited" circumstances. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). The Court has cautioned that "because granting a stay effectively

---

[27] Indeed, the court of appeals' ruling itself does not conclusively establish that the court refused to consider the writ application. In fact, it could be interpreted as denying relief on the merits based on the absence of any "argument" of error in the trial court's ruling.

excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id*. The record in this case discloses no good cause for Wade's failure to properly and fully exhaust each of his claims in the state courts.[28] Absent a showing of good cause, stay and abeyance would not be appropriate.

Accordingly, the petition should be dismissed without prejudice to allow Wade to fully exhaust available state court remedies as to all of his claims, <u>unless</u> he amends his *habeas* petition to dismiss or withdraw the unexhausted claims and proceed with only exhausted claims. *Pliler v. Ford*, 542 U.S. 225, 233 (2004) (*citing Rose*, 455 U.S. at 510).

---

[28] Petitioner offers no reason for his failure to raise his claims at each level of the state courts. Generally, "[n]either *pro se* status nor ignorance of the law constitutes good cause for a petitioner's failure to exhaust his state remedies." *See Byrd v. Thaler*, No. 4:10-CV-021-A, 2010 WL 2228548, at *4 (N.D. Tx. June 3, 2010) (citations omitted). Petitioner was certainly aware of his claims and could have asserted them to the Louisiana Supreme Court before filing his federal petition. In an abundance of caution, the Court notes that in Petitioner's motion to amend (Rec. Doc. 15), addressing the timeliness of his petition, he points out alleged "mishaps" in his appellate process; however, the Court has considered the allegations and finds his arguments do not demonstrate "good cause" for his failure to exhaust. The letter from his appointed appellate counsel simply pointed out that his ineffective assistance of counsel claims were not raised on direct appeal, and advised that he should assert these claims in a post-conviction application. It did not address further review of the claims actually raised before the court on direct appeal. Nor would problems obtaining a copy of transcripts establish good cause for his failure to raise his claims at all levels of the state court system. In fact, Petitioner has demonstrated his ability to assert his claims without his transcripts by doing so not only in the instant federal petition, but in asserting his other claims on collateral review in the state courts.

15

## RECOMMENDATION

**IT IS RECOMMENDED** that Petitioner's application for federal *habeas corpus* relief be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (*en banc*).[29]

New Orleans, Louisiana, this 21st day of October, 2014.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[29] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

16