## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

PATRICK A. WADE                                              CIVIL ACTION

VERSUS                                                       NO.  13-5890

STATE OF LOUISIANA                                           SECTION "J"(5)

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct

a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and

recommendations  for  disposition  pursuant  to  28  U.S.C. §636(b)(1)(B)  and  (C),  and  as

applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District

Courts.  Upon review of the entire record, the Court has determined that this matter can be

disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).  For the following

reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH

PREJUDICE**.[1]

### *I.  Procedural history*

Petitioner, Patrick Wade, is a convicted prisoner incarcerated in the Louisiana State

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily
mandated  determination.  Section  2254(e)(2)  authorizes  the  district  court  to  hold  an
evidentiary hearing only when the petitioner has shown either that the claim relies on a new,
retroactive  rule  of  constitutional  law  that  was  previously  unavailable,  28  U.S.C.  §
2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously
discovered by the exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts
underlying the claim show by clear and convincing evidence that, but for the constitutional
error, no reasonable jury would have convicted the petitioner.  28 U.S.C. § 2254(e)(2)(B).

Penitentiary, in Angola, Louisiana.  Wade was charged by bill of information with armed robbery in violation of Louisiana Revised Statute 14:64.[2]  On May 12, 2010, he was found guilty as charged.[3]  He was sentenced on June 17, 2010 to ninety-nine years imprisonment at hard labor without benefit of probation, parole or suspension of sentence.[4]  Thereafter, the State filed a multiple offender bill of information, alleging that Wade was a fourth felony offender under Louisiana Revised Statute 15:529.1.  Following a hearing on August 9, 2010, the trial court found Wade to be a fourth felony offender, vacated the original sentence, and imposed a sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.[5]

Wade appealed, asserting three assignments of error.  He alleged that the evidence presented by the State was insufficient to convict him of armed robbery, his sentence of life imprisonment was excessive, and the trial court erred in charging the jury that a less than unanimous verdict was sufficient to convict him of armed robbery.  The Louisiana Fifth Circuit

---

[2] State Rec., Vol. 1 of 6, Bill of Information.

[3] State Rec., Vol. 5 of 6, Trial transcript (May 12, 2010), p. 203; see also State Rec., Vol. 1 of 6, trial minutes.

[4] State Rec., Vol. 5 of 6, Transcript of sentencing proceedings held June 17, 2010, p. 32. State Rec., Vol. 1 of 6, sentencing minutes of June 17, 2010.

[5] State Rec., Vol. 5 of 6, Transcript of multiple bill hearing held August 9, 2010, pp. 10-11.

Court of Appeal affirmed his conviction and sentence on August 30, 2011.[6]  Wade did not seek further review on direct appeal in the Louisiana Supreme Court.

On August 2, 2012, Wade submitted a *pro se* application for post–conviction relief to the state district court.[7] In his application, he claimed that cumulative errors by defense counsel denied him effective assistance of counsel in violation of the Sixth Amendment.  He asserted six claims in particular:

> (1)    Trial counsel was ineffective when he failed to investigate and challenge the State's use of petitioner's alleged confession that was obtained through force and threats;
>
> (2)    Trial counsel was ineffective when he failed to conduct any investigation in obtaining video surveillance;
>
> (3)    Trial counsel was ineffective when he failed to investigate

---

[6] *State v. Wade*, 10-997 (La. App. 5th Cir. 8/30/11), 77 So.3d 275; State Rec., Vol. 1 of 6.

[7] State Rec., Vol. 1 of 6, Uniform Application for Post-Conviction Relief signed August 2, 2012.  Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state-court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006).  If that date cannot be gleaned from the state court record with respect to the filings in this case, this Court will simply use the signature date of the applications as the filing date, in that the various applications were obviously placed in the mail no earlier than the date they were signed. In those instances where no signature date appears on a document and no other evidence is available, the Court will look to the file-stamp placed on the document by the clerk of court.

and obtain a copy of the alleged victim's medical records;

(4)    Trial counsel was ineffective by being inadequately prepared for trial;

(5)    Trial counsel was ineffective when he failed to obtain transcripts from prior court proceedings held prior to enrollment as counsel in order to adequately prepare for trial; and

(6)    Trial counsel was ineffective due to his failure to possess the requisite experience during jury selection.[8]

On September 13, 2012, Wade filed a motion to appoint counsel and a supplemental application for post-conviction relief with two additional claims:

(7)    The State and trial judge deprived petitioner of his due process right to a fair trial by failing to observe procedures adequate to protect petitioner's right not to be tried and convicted while incompetent to stand trial; and

(8)    The State's late disclosure of video surveillance of the alleged crime scene deprived petitioner of his right to a fair trial.[9]

---

[8] *Id.*, Memorandum in support of post-conviction relief, pp. 3-9.

[9] State Rec., Vol. 2 of 6, Supplemental application for post-conviction relief with memorandum of law in support signed September 13, 2012 and bearing a file-stamp date of September 18, 2012.

On October 4, 2012, Wade filed a motion to supplement his post-conviction relief application with an additional exhibit.[10]   On October 23, 2012, the district court denied the motion to appoint counsel.[11]   On November 8, 2012, the district court denied his post-conviction relief application on the merits.[12]   On December 4, 2012, the district court denied petitioner's motion to supplement. The district court noted in its ruling that it had previously denied petitioner's application for post-conviction relief, and that "[n]othing in petitioner's Motion to Supplement affects that ruling or entitles petitioner to an evidentiary hearing."[13]

On or about December 7, 2012, Wade sought review of the district court's post-conviction ruling in the Louisiana Fifth Circuit Court of Appeal.  On January 31, 2013, the court of appeal denied relief.[14]  On or about February 18, 2013, Wade sought review of the denial to the Louisiana Supreme Court. The Louisiana Supreme Court denied relief without

---

[10] *Id.*, Motion to supplement post-conviction relief on request for evidentiary hearing signed October 4, 2012 and bearing a file-stamp date of October 9, 2012.

[11] *Id.*, Motion to appoint counsel to perfect his ineffective assistance of trial and appellate counsel claims; District Court Order denying motion to appoint counsel signed October 23, 2012.

[12] State Rec., Vol. 2 of 6, District Court Order signed November 8, 2012.

[13] *Id.*, District Court Order signed December 4, 2012.

[14] State Rec., Vol. 6 of 6, *Patrick Wade v. Burl Cain, Warden*, 12-KH-931 (La. App. 5th Cir. 1/31/13) (unpublished writ ruling).

assigning additional reasons on July 31, 2013.[15]

On September 17, 2013, Wade filed his federal application for *habeas corpus* relief.[16] In his petition, Wade raises the following claims:

(1)     The evidence was not sufficient to support the verdict;

(2)     The trial court imposed an excessive sentence;

(3)     The trial court erred in charging the jury that a less than unanimous verdict was sufficient to convict him of an offense punishable by hard labor;

(4)     The cumulative errors by trial counsel constitute ineffective assistance of counsel;

(5)     Trial counsel was ineffective when he failed to investigate and challenge the State's use of petitioner's alleged confession that was obtained through force and threats;

(6)     Trial counsel was ineffective when he failed to conduct any investigation in obtaining video surveillance;

---

[15] *State ex rel. Wade v. State*, 2013-KH-0422 (La. 7/31/13), 118 So.3d 1116; State Rec., Vol. 6 of 6.

[16] Rec. Doc. No. 1, Petition. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." *Roberts v. Cockrell*, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner signed the petition on September 17, 2013, which is presumed to be the earliest date on which it could have been delivered to prison authorities for mailing.

(7)     Trial counsel was ineffective when he failed to obtain a copy of the alleged victim's medical records;

(8)     Trial counsel was ineffective by being inadequately prepared for trial;

(9)     Trial counsel was ineffective when he failed to obtain transcripts from prior court proceedings held prior to enrollment as counsel in order to prepare adequately for trial;

(10)    Trial counsel was ineffective due to his failure to possess requisite experience during jury selection;

(11)    The State deprived him of his due process right to a fair trial by failing to observe procedures adequate to protect his right not to be tried or convicted while incompetent to stand trial;

(12)    The State deprived him of his due process right to a fair trial in violation of the Fifth and Fourteenth Amendments to the United States Constitution by failing to conduct a hearing on his mental capacity.[17]

The State argued that the federal application was untimely and that Wade had failed to exhaust his remedies in the state courts.[18]  The undersigned magistrate judge found the latter argument had merit and issued a report and recommendation to this effect.  Wade has since

---

[17] Rec. Doc. No. 1, Petitioner's memorandum of law in support of *habeas corpus*, pp. 2-3.

[18] Rec. Doc. No. 14.

withdrawn his three unexhausted claims and seeks to proceed with his nine exhausted claims (numbered four through twelve).   The matter has been referred to the undersigned for resolution of these exhausted claims.

## II. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal *habeas* court's role in reviewing state prisoner applications in order to prevent federal *habeas* 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must

defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell*, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

*Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and footnotes omitted), *cert. denied*, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court has held:

> [A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case.

*White v. Woodall*, 134 S.Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as

9

error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

*Id.* (citations and quotations marks omitted). The Supreme Court has also warned that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

*Harrington v. Richter*, 131 S.Ct. 770, 786–87 (2011) (citations omitted; emphasis added); *see*

*also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

### *III.  Facts*

On direct appeal, the Fifth Circuit Court of Appeal summarized the facts of this case as follows:

> At trial, Christine Delatorre testified that on April 15, 2009, she was working at Barry's Flooring on Veterans Boulevard in Metairie when a man walked into the store carrying a floral "fake looking" Gucci bag. At the time, Mrs. Delatorre was seven months pregnant. Mrs. Delatorre greeted the man, but the man ignored her. She testified that the man walked toward her and when he was approximately three feet from her, he took a gun out of the bag and pointed it at her.
>
> The man then demanded money from Mrs. Delatorre. Mrs. Delatorre informed the man that the store did not have any money or a cash register. The man became irate, lunged at Mrs. Delatorre, and knocked her to the ground. She began to scream. Mrs. Delatorre's attacker wrapped his right arm around her head in a headlock and tried to put his other hand on her mouth to cover her screams. The man struck Mrs. Delatorre several times in the face when she would not stop screaming. According to Mrs. Delatorre, he told her that he would kill her if she did not stop screaming.
>
> Eventually, the perpetrator allowed Mrs. Delatorre to get to her feet. She emptied out a bank envelope with some change in it, and she gave the man the cash contents of her purse (approximately ten dollars), as well as her wedding rings. The man then ripped a telephone cord out of the back of a telephone, tied her hands behind her back, and tied her feet to the same cord. As a result of the attack, Mrs. Delatorre suffered three lacerations to her lip and a piece of cartilage broken in her nose. She was also hospitalized for two days to monitor her pregnancy.
>
> On June 2, 2009, the police presented Mrs. Delatorre with a photographic lineup.

She positively identified defendant from the photographic lineup as the man who had attacked her on April 15, 2009. She also positively identified defendant in open court at trial.

Sergeant Rodney Naumane of the Jefferson Parish Sheriff's Office testified that on April 15, 2009, he responded to a call at Barry's Flooring. Sergeant Naumane testified that he lifted fingerprints and palm prints from a telephone in the back office of Barry's Flooring and from the front door. According to Sergeant Naumane, a black cord was lying in the middle of the floor in the back office near the telephone.

Aischa Prudhomme testified that she is a latent print examiner for the Jefferson Parish Crime Laboratory. Ms. Prudhomme was subsequently accepted as an expert in latent fingerprint analysis. Ms. Prudhomme testified that she was able to identify an inner digital left palm print from the back office telephone of Barry's Flooring as coming from defendant's hand.

Rochelle Polito testified that she is an insurance agent at Geico. On April 15, 2009, she was working at her office, which is next door to Barry's Flooring. At approximately 11:00 a.m., Ms. Polito heard a loud "commotion" and then "screaming" through the wall shared by Barry's Flooring and the Geico office. Ms. Polito heard Mrs. Delatorre make a muffled scream and then say, "Why are you doing this to me, what do you want from me?"

Ms. Polito testified that she and a woman interviewing for a position with Geico ran next door. According to Ms. Polito, she saw a man running from the store and she "seen [sic] him turn and look back, quickly." Ms. Polito further indicated that she "pretty much took a picture of his face in my mind, knowing something was wrong." Ms. Polito watched the man run to a nearby Arby's parking lot, enter an older model maroon-colored vehicle, and drive away. Ms. Polito then entered Barry's Flooring and found Mrs. Delatorre tied up, and on the floor. Ms. Polito positively identified defendant in open court as the man she saw flee Barry's Flooring that day. She also identified defendant from the same photographic lineup presented to Mrs. Delatorre.

Sergeant David Mascaro testified that he executed an arrest warrant and a search warrant at 3005 Lake Villa Drive, Apartment F. Defendant's wife answered the door. Sergeant Mascaro observed defendant exit a bedroom and subsequently took him into custody. Pursuant to the search warrant, Sergeant

Mascaro recovered the laptop computer Mrs. Delatorre used at Barry's Flooring.

Detective Brett Beavers testified that he interviewed Mrs. Delatorre and other witnesses to the robbery. Eventually, he developed defendant as a suspect in this matter after receiving information from the Jefferson Parish Crime Laboratory. He showed a photographic lineup to Mrs. Delatorre, who positively identified defendant as the man who robbed her. Detective Beavers also participated in the execution of the search warrant and the arrest warrant at 3005 Lake Villa Drive. Defendant subsequently gave a recorded statement to Detective Beavers, which was played for the jury.

In the statement, defendant indicated that he has a problem with heroin and that on April 15, 2009, he was "sick" and needed some money to buy heroin. Defendant stated that he went to his mother's house in Gretna, saw this "little toy gun little lighter thing," and decided he was going to rob somebody with it. He noticed that there were no cars in the Barry's Flooring parking lot and decided to rob that store. After seeing a woman, defendant pulled out the "gun," which promptly fell apart. According to defendant, he then put the "gun" into a fake Louis Vuitton bag and grabbed the woman, who began screaming. Defendant indicated that he told the woman that he was not going to hurt her and that he just wanted money. The woman gave him 11 dollars and he grabbed several rings that he saw on a table. At that point, defendant indicated that he tied the woman up with a phone cord, and ran to the back of the Arby's where he had parked. He then went and bought a bag of heroin in New Orleans.

Darcelle MacKyeon testified that she was an employee of Cash America Pawn in Algiers on April 15, 2009. Ms. MacKyeon testified that at 12:10 p.m. on April 15, 2009, a person identifying himself as "Patrick Wade" pawned a three-piece white gold wedding ring set for $120.[19]

### IV. Discussion

### A. Ineffective Assistance of Counsel - Established law

As correctly noted by the state district court, ineffective assistance claims must be

---

[19]*State v. Wade*, 10-997 (La. App. 5th Cir. 8/30/11), 77 So.3d 275, 276.

analyzed under the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Id.* at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir.1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir.2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.* deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir.2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (*quoting Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Matthesson v. King*, 751 F.2d 1432, 1441

14

(5th Cir.1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

Because the state courts rejected petitioner's ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir.2002). Moreover, the United States Supreme Court has explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact doubly deferential:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in

operation when the case involves review under the *Strickland* standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid.* "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. 111, ––––, 129 S.Ct. 1411, 1413–14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

*Harrington v. Richter*, 131 S.Ct. 770, 785–86 (2011) (citation omitted). The Supreme Court then explained:

Surmounting *Strickland's* high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions*

> were reasonable. The question is whether there is any reasonable argument that
> counsel satisfied Strickland's deferential standard.

*Id.* at 788 (citations omitted; emphasis added).

*(1)  Failure to challenge confession*

First, Wade argues counsel was ineffective in failing to challenge his confession on grounds that it was coerced by threats and force.  He maintains detectives physically abused him during the interrogation and that counsel's "failure to investigate and obtain readily available medical evidence that supported [his] contention that he was physically abused by the arresting officers prevented [him] from having the alleged confession suppressed."[20]

The trial court denied relief, finding no merit to the claim, no deficiency in performance and no resulting prejudice.  The court noted that the confession was properly challenged by motion to suppress, which was heard and denied on October 26, 2009.  The higher courts affirmed the ruling.

Wade alleges that he informed retained counsel Morris Reed, Jr., who enrolled as counsel on January 8, 2010, about the physical abuse.  Prior to this time, Wade was represented by James A. Williams.  Wade challenges Reed's actions, in particular, in failing to challenge the confession.  The record reflects that upon his enrollment, Reed filed a motion to suppress the statement.[21]  On January 16, 2010, that motion was denied without a hearing

---

[20]Rec. Doc. No. 1, Memorandum in support, pp. 13-14.

[21]State Rec., Vol. 3 of 6.

based on the trial court's earlier denial of a motion to suppress the confession filed by Wade's former defense counsel, Williams.  The earlier motion sought suppression of the statement on grounds that it was not freely or voluntarily made and was influenced by fear, duress, intimidation, menaces, threats, inducements and promises.[22]  On  October 26, 2009, the court held a suppression hearing and denied the motion to suppress.  During that hearing, defense counsel Williams fully explored the circumstances surrounding Wade's arrest, interrogation and statement.[23]  Detective Brett Beavers testified that he alone questioned Wade and took his recorded statement.  Beavers testified unequivocally that no force, coercion or intimidation was used to obtain the statement.[24]

Wade refers only generally in his petition to alleged "physical abuse."  He does not specify the nature of the abuse or detail the circumstances that he claims led him to confess. He revealed more specific factual allegations, however, during his sentencing.[25]  Wade informed the trial judge that he only gave the statement because one detective had a taser to his back and they had four detectives twisting his legs.  He claims he suffered torn ligaments

---

[22]State Rec., Vol. 3 of 6, Motion to Suppress filed on or about October 22, 2009 by James Williams.

[23]State Rec., Vol. 3 of 6, Transcript of suppression hearing held October 26, 2009, pp. 12-27.

[24]*Id*. at 11.

[25]State Rec., Vol. 5 of 6, Transcript of sentencing proceedings held June 17, 2010, pp. 28-31.

in his legs as a result of this.  He also stated that Detective Beavers had a big automatic handgun sitting on the desk in front of Wade's face throughout the questioning.  All of these allegations were flatly contradicted by Detective Beavers' testimony during the suppression hearing as well as at trial.[26]  The trial court also questioned the veracity of his allegations, particularly if, as Wade asserted, he told both defense attorneys what had transpired and neither pursued a complaint with the internal affairs department.

Based on the state court record, it is clear that Reed not only did challenge the confession and attempt to have it suppressed, but this was, in fact, the *second* motion to suppress that had been filed and considered by the trial court.  A motion to suppress the statement had already been heard and denied by the time Reed enrolled as counsel.  According to Wade himself, he had already informed former defense counsel, James Williams, about his claim that detectives inflicted physical abuse on him during the statement.[27] Williams, similar to Reed, chose not to pursue further investigation of those claims, a decision that was not unreasonable under the circumstances.  There is absolutely no evidence, apart from Wade's purely self-serving allegations, that he was subjected to any physical abuse, threats or force of any kind during questioning.  Even if medical records confirmed that Wade complained of

---

[26]State Rec., Vol. 5 of 6, Trial transcript (May 12, 2010), pp. 86-88.

[27]Wade admitted to the trial court during sentencing that he told his former lawyer about the incident and alleged physical abuse.  State Rec., Vol. 5 of 6, Sentencing transcript, p. 30.

pain in his legs and that he received treatment sometime after his arrest, this fact alone does not suggest that he was physically injured by detectives during questioning.  Nor would such evidence have demonstrated that his statement was not freely or voluntarily made.

For these reasons, Wade fails to show that counsel's representation fell below an objective standard of reasonableness or that, but for counsel's errors, the end result would have been different.  The state court did not apply the pertinent law to the facts of this case in an objectively unreasonable manner.

*(2)  Failure to obtain video surveillance*

Next, Wade claims counsel was ineffective in failing to investigate and obtain a copy of the video surveillance tape, which Wade contends would prove he did not rob the victim.  The trial court denied relief, finding no showing of deficient performance or prejudice.  The court noted the victim in this case testified that no video surveillance equipment existed inside the store and the police were unable to obtain any video footage from the surveillance equipment located outside the store. Thus, Wade failed to prove what additional investigation would have revealed.

First, the record evidence shows that Barry's Flooring had no security camera equipment *inside* the store.  Therefore, there was no surveillance footage from inside the store for defense counsel to obtain.  Second, regarding the security footage captured on video surveillance equipment located *outside* of the building complex that housed Barry's Flooring and several other businesses, this video was introduced at trial by the State and used by the

20

defense in cross-examining witnesses, despite some admitted confusion surrounding the tape's existence.

On the morning of trial, defense counsel complained that he still had not received all of the requested discovery, and mentioned in particular, a copy of the surveillance tape.  The State prosecutor informed the trial court and defense counsel that although the surveillance tape was mentioned in the police report, it was not in the State's possession.  Police detectives initially had the videotaped footage, obtained from one of the businesses in the complex, but according to Detective Beavers, the copy they thought was on their hard drive did not actually exist.  The original tape had long since been returned to the owner.  Therefore, they did not believe the surveillance tape still existed.[28]  As a result of discussions with the prosecutor on the morning of trial regarding the missing tape, Detective Beavers contacted the business to see if they still had the original tape.  He learned the tape was still available and obtained a copy of it.  That same evening, the State informed the trial court and defense counsel that it had obtained a copy and planned to introduce the tape.  The trial court allowed defense counsel to view the tape in its entirety.  The surveillance tape was subsequently admitted at trial over defense counsel's objection.[29]

Counsel for both parties knew that a video surveillance tape at some point existed

---

[28]State Rec.,  Vol. 3 of 6, Trial Transcript (May 11, 2010), p. 26, 42.

[29]State Rec., Vol. 4 of 6, Trial Transcript (May 11, 2010), pp. 158-168.

because it was mentioned in the police report.  However, the record shows that defense counsel was diligent in his attempts to request and obtain a copy of the tape from the State through discovery.  Because the State did not have the tape in its possession, it could not produce, and the defense could not discover, evidence that presumably did not exist.  Thus, the trial court reasonably could have concluded that counsel was not deficient in failing to obtain the surveillance videotape under the circumstances.

Furthermore, even assuming, *arguendo*, that counsel's failure to obtain the video earlier through independent investigation constituted deficient performance, Wade has not shown that, but for counsel's error, the end result would have been any different.  Defense counsel's objection to the admission of the tape was overruled and there is nothing to suggest the result would have been any different had the tape been available at some earlier date.  Furthermore, the video quality was poor and the identity of the perpetrator could not be determined based on the video footage.[30]  Additionally, the video merely reflected the same events to which the State's witnesses testified at trial.  Thus, on the record, Wade has failed to establish either deficient performance or prejudice.  Accordingly, this claim lacks merit.

---

[30]The two witnesses, Rochelle Polito and Jacqueline Barbin, who testified at trial about the events shown on the video described the footage as "blurry," "foggy," and "grainy."  State Rec., Vol. 4 of 6, Trial Transcript (May 11, 2010), pp. 208-209; Trial Transcript (May 12, 2010), pp. 22-25.  Detective Beavers referred to the video as "not newsworthy," because they could not make a positive identification from it.  State Rec., Vol. 5 of 6, Trial Transcript (May 12, 2010), pp. 101-102.

*(3)  Failure to obtain the victim's medical records*

Wade next asserts that counsel rendered ineffective assistance in failing to obtain a copy of the victim's medical records. The trial court rejected Wade's post-conviction claim that the medical records could have been used during cross-examination to impeach the victim's testimony about sustaining a broken nose, and found that Wade failed to show deficient performance or prejudice.

Defense counsel's failure to obtain the victim's medical records in order to pursue a line of questioning on cross-examination challenging the victim's testimony with regard to the extent of her injuries does not constitute ineffective assistance. Rather, the decisions made by counsel in this regard fall squarely within the exercise of reasonable professional judgment. It is clear that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." *Ford v. Cockrell*, 315 F.Supp.2d 831, 859 (W.D. Tex. 2004), *aff'd* 135 F. App'x 769 (5th Cir. 2005); *see also Parker v. Cain*, 445 F.Supp.2d 685, 710 (E.D. La. 2006). The victim testified that the perpetrator hit her several times in the face, which resulted in a "busted lip" and a broken piece of cartilage in her nose. Photographs in this case corroborated the victim's testimony, and that of several eyewitnesses, regarding the fact that she sustained injury to her face. On cross-examination, defense counsel explored the physical injuries she suffered and the victim conceded there were no physical markings or injuries visible to her face because the

injuries were to the inside of her mouth and nose.[31]  The victim in this case was seven months pregnant at the time of the crime and witnesses testified that they found her bound by her wrists and ankles and with her face bloodied.  Challenging the victim on whether she had, in fact, suffered a broken nose would have served no purpose and may have been viewed as badgering the witness.  This claim lacks merit.

*(4)  Inadequate preparation for trial*

Wade asserts that defense counsel, Morris Reed, Jr., did not adequately investigate or prepare for trial.  He claims this is evidenced by Reed's error regarding the trial date and his enlisting the help of co-counsel, Lionel Burns, for trial.  In particular, Wade argues that Reed "only questioned the lead detective and his performance was without merit."[32]  He also asserts that co-counsel Burns was not prepared due to his unfamiliarity with Wade's case, but points to no specific instances of alleged inadequate performance at trial.  The trial court denied these claims on post-conviction review as purely speculative.

Wade's vague and conclusory assertions regarding inadequate investigation and preparation, without reference to specific instances of alleged error or inadequacies at trial, fail to establish either poor preparation by Reed or Burns or that their representation and performance at trial was deficient.  The mere fact that Reed initially was confused and thought

---

[31]State Rec., Vol. 3 of 6, Trial Transcript (May 11, 2010), pp. 90-91.

[32]Rec. Doc. No. 1, Petitioner's Memorandum in Support, p. 16.

trial was scheduled for June 14, 2010 instead of May 11, 2010 does not establish unpreparedness for trial.  Reed had been enrolled as counsel of record since January and knew that the trial date was approaching.  Furthermore, Reed learned of the correct trial date at a general hearing held the day before trial and had ample time and opportunity to complete preparations for trial the next day.  Additionally, engaging co-counsel for the limited purposes of trial actually suggests adequate, rather than inadequate, preparation for trial.

The trial transcript flatly contradicts Wade's assertion that Burns was unfamiliar with his case.  Burns expertly conducted cross-examination of the majority of the witnesses in this case and demonstrated full command of the facts and evidence.  Burns' conduct at trial indicates that he was sufficiently and thoroughly prepared.  Similarly, Wade has pointed to no objective evidence that Reed's cross-examination of the lead detective was insufficient, and the Court finds nothing in the record to support his assertion.  Finally, even assuming that Wade could establish deficient performance by defense counsel in preparing for trial, he has not shown that additional investigation or preparation would have made any difference at trial.   This claim is without merit.

*(5) Failure to obtain transcripts of prior proceedings*

Wade contends counsel was ineffective in failing to obtain the transcript of the October 26, 2009 motion to suppress hearing "in order to get an understanding of the statements that

were made, and as well as to get himself competent for Mr. Wade's case."[33]   The trial court

rejected this claim because it based on speculation and because Wade did not demonstrate

how counsel's failure to order the transcript rendered his performance deficient.

Reed had access to former counsel's file materials that contained all relevant pleadings

that had been filed to date.   Reed knew the history of all proceedings conducted before he

enrolled as counsel.   Reed clearly had access to Wade's transcribed statement that was

formally part of the record and introduced into evidence during the suppression hearing.   In

fact, Reed stated on the record that he had received and reviewed Wade's transcribed

statement.[34]   Wade offers no proof that counsel failed to review the transcript of the

suppression hearing or familiarize himself with the statements at issue.   The record does not

support his allegation.   Accordingly, this claim lacks merit.

*(6) Failure to possess the requisite experience during jury selection*

Next, Wade contends counsel was not prepared to select a jury on his own and that his

lack of preparation prejudiced the outcome of trial.   He argues that Reed admitted his lack of

experience when he told Wade he had only been in practice for a year and a half.   The trial

court denied relief on this claim, finding no evidentiary support and further noting that the

record reflects that counsel did, in fact, select the jury on his own.

---

[33]*Id.* at 16.

[34]State Rec., Vol. 3 of 6, Trial Transcript (May 11, 2010), pp. 33-34.

Wade does not specify how defense counsel was unprepared or how his actions or omissions during jury selection constituted ineffective assistance. The mere length of time counsel had been in practice does not establish that he performed deficiently during jury selection.[35] Thus, Wade offers no proof besides his own conclusory assertion that counsel was unprepared for voir dire and that his actions fell below an objective standard of reasonableness. Nor does he establish that, but for the alleged inadequate performance during voir dire, the end result would have been different. Accordingly, this claim lacks merit.

*(7) Cumulative error*

Finally, Wade argues that cumulatively, his assertions of ineffective assistance of counsel warrant relief. This argument is without merit. Where, as here, the individual contentions are meritless, that result cannot be changed simply by asserting them collectively. *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir.2008), *cert. denied*, 129 S.Ct. 1544 (2009); *United States v. Hall*, 455 F.3d 508, 520 (5th Cir.2006); *Miller v. Johnson*, 200 F.3d 274, 286 n. 6 (5th Cir.2000). As the United States Fifth Circuit Court of Appeals noted with respect to analogous claims of cumulative error: "Twenty times zero equals zero." *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir.1987).

In sum, Wade has not demonstrated that the state court's decision rejecting these

---

[35]In his written response to Wade's disciplinary complaint, Reed stated that he had experience trying other cases, including armed robbery, and had been successful in those instances. State Rec., Vol. 1 of 6, Attorney Response.

ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

**B.  Denial of due process for lack of competency determination**

Wade asserts that his constitutional rights were violated by the failure to hold a competency hearing in order to determine if he was competent to proceed with the criminal trial. This claim was raised in a supplemental application for post-conviction relief and denied without additional reasons.

On the first day of trial, an issue regarding Wade's capacity, namely a previous evaluation of Wade as "learning disabled," was brought to the trial court's attention for the first time when defense counsel sought to change Wade's plea of not guilty to not guilty by reason of insanity.[36]  Reed argued that the audiotape of Wade's confession with pauses and gaps of silence in answers, which counsel stated he was hearing for the first time, along with an evaluation by the Orleans Parish Public School System that Wade was learning disabled, warranted the change in plea.   This verbal exchange followed:

---

[36]To the extent Wade may be arguing that the trial court misapplied state law in denying his request to change his plea to not guilty by reason of insanity, this Court does not review determinations regarding issues of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir. 1999).

MR. REED:

      I am asking to allow us to withdraw our former plea of not guilty, and enter a plea of not guilty for reasons of insanity.

      And if you would like, Your Honor, you could take a look at this evaluation from 1990, when it speaks of his – his reading levels and his intelligence levels, his problems with learning, and problems of reading.  And this is an original copy.  It says, New Orleans Public Schools Multidisciplinary Integrated Report, and it was done on September 11th of 1990.  It speaks of screening, reasons for referrals, primary re-evaluation questions –

THE COURT:

      I understand.

      I understand, but I am not going to allow it.

MR. REED:

      – classroom observations.

THE COURT:

      I am not going to allow it, Mr. Reed.

      Code of Criminal Procedure Article 561 says, a change of

plea of not guilty to not guilty by reason of insanity, the
Defendant may withdraw a plea of not guilty and enter a
plea of not guilty or not guilty by reason of insanity within
ten days after arraignment.  Thereafter, the Court may, for
good cause shown, allow such a change of plea at any time
before commencement of trial.

MR. REED:

Alright.  But I understa.. –

THE COURT:

I don't believe that good cause has been shown.  That is a
document that you could have obtained because you have
been Counsel of Record since January.  You could have
done that any time prior to that, and it wasn't done.  And
I don't believe that that tape alone would have indicated
to you, that you wanted to change that plea.
I believe that there hasn't been good cause shown for the
change; so I am going to deny that.[37]

Regarding the constitutional standard for competency to proceed, the United States

_____

[37]State Rec., Vol. 3 of 6, Trial Transcript (May 11, 2010), pp. 38-39.

Fifth Circuit Court of Appeals has explained:

> Constitutional due process requires that the trial of an accused may be conducted only when they are legally competent. *See Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). A court must sua sponte conduct an inquiry into a defendant's mental capacity if the evidence raises a bona fide doubt as to the defendant's competency. *See Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *see also Lokos v. Capps*, 625 F.2d 1258 (5th Cir.1980). In considering whether a hearing should have been conducted into the defendant's mental status, "[t]he question is: Did the trial judge receive information which, objectively considered, should reasonably have raised a doubt about defendant's competency and alerted him to the possibility that the defendant could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense." *Id.* at 1261. The test to determine whether a Pate procedural violation has occurred is an objective one based on what was known to the trial court at the time of the trial. *Id.* (citation omitted). The Supreme Court has not articulated a precise standard for what should indicate a bona fide doubt, but generally the Court focuses on three factors that should be considered: (1) the existence of a history of irrational behavior, (2) defendant's demeanor at trial, and (3) a prior medical opinion. *See e.g., Drope*, 420 U.S. at 180, 95 S.Ct. 896. Even one of these factors, standing alone, may be sufficient to signal a constitutional violation. *Id.*

*Mathis v. Dretke*, 124 Fed. App'x 865, 875 (5th Cir.2005). "The habeas petitioner carries the burden of showing that a *Pate* violation occurred by making a clear and convincing showing of the existence of a real, substantial and legitimate doubt as to his mental capacity." *Wheat v. Thigpin*, 793 F.2d 621, 629 (5th Cir.1986) (quotation marks and brackets omitted).

Petitioner has not met his stringent burden of proof in this case.  He has failed to establish that "real, substantial and legitimate doubt," existed as to his competency.  He points to no history of irrational behavior or any prior medical opinion.  The only information he supplies is a twenty-year-old report from educators in the Orleans Public School system who

evaluated him in the seventh grade and determined he met the qualifications for special services due to a learning disability.  The trial court in its assessment observed nothing about Wade's overall demeanor to suggest any doubt regarding his mental incapacity.  A competency hearing simply is not required where, as here, there is no evidence of actual incompetency. This claim lacks merit.

## RECOMMENDATION

**IT IS RECOMMENDED** that petitioner's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (*en banc*).[38]

New Orleans, Louisiana, this 12th day of _____December_____, 2014.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[38] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.